## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

BRANDON WARD,

        Petitioner,

v.                                                            Case No.  3:17-cv-407-MCR/MJF

SECRETARY, DEPARTMENT OF
CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

      Brandon Ward, represented by counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 15). Ward replied. (Doc. 27). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Ward is not entitled to habeas relief.[1]

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background Facts and Procedural History[2]

In the early morning hours of June 25, 2006, Ward fatally stabbed Joe Hall and stabbed, but did not kill, Joe Ruinato. The stabbings occurred while Hall and Ruinato were escorting Ward's then girlfriend, Samantha Sparling, to her front door after a party. Ward and Sparling had attended the party together but left separately after Ward hit Sparling and was chased off the property by other partygoers (not Hall and Ruinato). Hall and Ruinato drove the intoxicated Sparling home. Once they arrived at Sparling's home, Hall and Ruinato exited the car with Sparling and walked toward the front door. Ward emerged from behind a car in the driveway and walked quickly toward the group. Ward was angry and "bowed up" with his hands behind his back. Unbeknownst to Hall and Ruinato, Ward was holding a knife. Hall asked Ward if he was the guy who hit Ms. Sparling. Ward replied, "Yeah" in addition to, "Get away from my f---ing girlfriend." Hall extended his right arm in an attempt to

---

[2] The facts are drawn from the evidence presented at Ward's second trial, viewed in the light most favorable to the State. (Doc. 15-36, Ex. 55 through Doc. 15-44, Ex. 62 (trial transcript volumes IV, III, II, VII, VIII, V, VIII and I, as they appear, out of order, in the electronic record with two volumes numbered "VIII"); Doc. 15-29, Ex. 42 through Doc. 15-33, Ex. 47 (trial transcript volumes IX, X, XI, XII, XIII and VI as they appear, out of order, in the electronic record)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

stop Ward's advance. Ward used the slash and thrust technique to fatally stab Hall. Ward then turned to Ruinato, who was a few steps behind and to the side of Hall, and stabbed him using the same technique. Neither Hall nor Ruinato had attacked or threatened Ward. Later, as Ruinato lay on the ground bleeding and informing Sparling's mother (Mrs. Zuccarello) that he was hurt, Ward advanced toward Ruinato with the knife, yelling at Ruinato to "Shut the f--k up." (Doc. 15-38, Ex. 56 at 375-78). Mrs. Zuccarello instructed her husband to get the knife, and Mr. Zuccarello successfully knocked the knife from Ward's hand. The police and EMS arrived shortly thereafter. Hall was pronounced dead at the scene. Ruinato was hospitalized for severe injuries.

In Santa Rosa County Circuit Court Case No. 2006-CF-911, a grand jury indicted Ward for first-degree premeditated murder (Count 1) and attempted first-degree premeditated murder (Count 2). (Doc. 15-10, Ex. 12 at 2000-2001).[3] Ward's defense was self-defense. After a 10-day trial (May 15, 2007 – May 24, 2007), the jury found Ward guilty of the lesser-included offenses of second-degree murder for

_____

[3] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 15). The citation refers to the electronic attachment number followed by the exhibit number. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom left corner of the page.

the death of Hall and attempted second-degree murder for the stabbing of Ruinato. (Doc. 15-12, Ex. 15 at 2570-71 (verdict)). The trial court adjudicated Ward guilty and sentenced him to life in prison for the murder and a concurrent term of 25 years in prison for the attempted murder. (Doc. 15-13, Ex. 17 at 2914-19). On appeal, the Florida First District Court of Appeal ("First DCA") reversed Ward's convictions due to errors in the jury instructions and remanded for a new trial. *Ward v. State*, 12 So. 3d 920 (Fla. 1st DCA 2009).

Ward was re-tried on charges of second-degree murder and attempted second-degree murder and, again claimed self-defense. Ward's version was that he was waiting outside Sparling's home for her return. When Hall and Ruinato were walking Sparling toward the house, he overheard the men say they were going to kill him. Ward stepped into view and waved to Sparling, hoping that she would come over to him. When Hall saw Ward, Hall allegedly became enraged and came at Ward yelling that he was going to kill him. Ward grabbed his knife. Hall allegedly hit Ward hard on the side of the head, and Ward defended himself with the knife. Ward started toward the house for help, but Ruinato also allegedly came after him and

threatened to kill him. Ruinato purportedly attacked Ward, and Ward again defended himself with the knife.[4]

The jury found Ward guilty of manslaughter with a weapon for the death of Hall (Count 1), and attempted second-degree murder with a weapon, causing severe injury, for the stabbing of Ruinato (Count 2). (Doc. 15-27, Ex. 37 at 7011-12). The trial court adjudicated Ward guilty and sentenced him to 30 years of imprisonment for the manslaughter and a consecutive term of 30 years of imprisonment for the attempted murder. (Doc. 15-29 at 7393-98). The First DCA affirmed *per curiam* and without written opinion. *Ward v. State*, 90 So. 3d 281 (Fla. 1st DCA 2012) (Table). Rehearing was denied on June 13, 2012. *Id*. The United States Supreme Court denied certiorari on October 29, 2012. *Ward v. Florida*, 568 U.S. 988, 133 S. Ct. 549 (2012).

On October 2, 2013, Ward filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Doc. 15-1, Ex. 1 at 51-68), which he later amended. (Doc. 15-1, Ex. 1 at 83-100). The state circuit court conducted an evidentiary hearing on December 3, 2015. (Doc. 15-4, Ex. 5) (evidentiary hearing transcript)). On January 12, 2016, the circuit court entered an order denying relief

---

[4] This summary is based on Ward's initial brief on direct appeal. (Doc. 15-45, Ex. 67 at 16-18).

on all claims. (Doc. 15-4, Ex. 4 at 616-24). Ward appealed, represented by counsel. (Doc. 15-4, Ex. 4 at 625-26 (notice of appeal); Doc. 15-48, Ex. 79 (initial brief)). The First DCA affirmed *per curiam* without written opinion. *Ward v. State*, 224 So. 3d 217 (Fla. 1st DCA 2017) (Table) (copy at Doc. 15-49, Ex. 82). The mandate issued May 19, 2017. (Doc. 15-49, Ex. 82).

While his Rule 3.850 proceeding was pending, Ward filed a counseled petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(d). (Doc. 15-46, Ex. 72). The First DCA denied the petition on April 16, 2015. *Ward v. State*, 163 So. 3d 616 (Fla. 1st DCA 2015) (copy at Doc. 15-47, Ex. 75).

Ward filed his counseled federal habeas petition on June 14, 2017. (Doc. 1). The petition raises eight grounds for relief. (Doc. 1). The State asserts that all of Ward's claims fail because they are either procedurally defaulted, without merit, or both. (Doc. 15).

## II.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The

---

[5] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*,

633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no

further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III. Discussion

### **Ground One**        **Defense counsel rendered ineffective assistance of counsel by failing to retain a 'use of force' expert.**

Ward claims that his trial counsel was ineffective for failing to retain Roy Bedard as a "use of force" expert to support Ward's defense that he stabbed Hall and Ruinato in self-defense. The parties agree that Ward presented this claim to the state courts as Ground One of his amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily

affirmed without explanation. (Doc. 1 at 5; Doc. 15 at 15-20). The State asserts that Ward is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 15 at 21-27).

### A.      The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

Ward's habeas counsel asserts that this court "should utilize the *de novo* standard to review [Ward's] claims because the Florida appellate courts issued per curiam decisions (i.e., the Florida appellate courts did not issue written opinions)." A summary opinion, Ward contends, is not an adjudication on the merits. (Doc. 1 at 17). Ward relies on the district court's analysis in *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289, 1297 (M.D. Fla. 2011), to support this position. (*See* Doc. 1 at 17).

The State asserts that the Eleventh Circuit flatly rejected Ward's position seven years ago when it reversed the district court in *Shelton, supra*. (Doc. 15 at 20-21 (citing *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1353 (11th Cir. 2012)). The State is correct.

In *Richter*, *supra*, the United States Supreme Court held:

When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. The presumption may

Page 11 of 63

> be overcome when there is reason to think some other explanation for
> the state court's decision is more likely.

*Richter*, 562 U.S. at 99-100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991));

*see also Richter* at 100 (confirming that "§ 2254(d) does not require a state court to

give reasons before its decision can be deemed to have been 'adjudicated on the

merits'").

The district court in *Shelton* concluded that *Richter*'s presumption was

rebutted, because the First DCA's decisions in Shelton's case were "one-word

summary affirmances" and the Florida Supreme Court held in 1983 that a *per curiam*

affirmance has no precedential value and is not an adjudication on the merits.

*Shelton*, 802 F. Supp. 2d at 1297 (citing *Dep't of Legal Affairs v. Dist. Court of*

*Appeal, 5th Dist.*, 434 So. 2d 310 (Fla.1983)). The Eleventh Circuit disagreed:

> The district court is only half-right, and not on the half that counts for
> federal habeas purposes. The Florida Supreme Court never held that a
> 'per curiam appellate court decision with no written opinion' is not an
> adjudication on the merits; all it did was hold that the decision holds no
> precedential value for future cases.

*Shelton*, 691 F.3d at 1353. The Eleventh Circuit held in *Shelton* that the mere fact

that a Florida appellate court affirms a lower court's merits ruling in a *per curiam*

decision without written opinion does not rebut *Richter*'s presumption. *Id.* at 1353

("Here, the state court on direct appeal did not apply a procedural bar, and we are

therefore compelled to presume that the court rendered an 'adjudication on the merits' entitled to AEDPA deference."). In so holding, the Eleventh Circuit noted that Petitioner Shelton made no attempt to rebut *Richter*'s presumption by any other showing. *Id.* at 1353 nn.31, 37.

The Eleventh Circuit's decision in *Shelton*, 691 F.3d at 1353, is binding on this court. Because Ward's argument does not rebut *Richter*'s presumption, and because that is the only attempt Ward makes to rebut the presumption, this court is compelled to conclude that the First DCA's summary decision in Ward's Rule 3.850 appeal is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

### B.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## C.    Section 2254 Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, the federal habeas court "look[s] through the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained

decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018) (internal quotation marks omitted). This court, therefore, presumes that the First DCA rejected Ward's claim for the reasons provided in the state circuit court's order.

The state circuit court held an evidentiary hearing on this claim and denied relief. (Doc. 15-4, Ex. 4 at 616-24). The order related these historical facts:

<u>Background</u>

A review of the record shows that it was uncontested at trial that the Defendant, Brandon Ward, stabbed Joe Hall and Joseph Ruinato. The stabbings caused Hall's death and gravely injured Ruinato, who survived due to subsequent medical intervention. In addition to Ruinato, the stabbing was witnessed by two young women, Samantha Sparling, who was the Defendant's girlfriend at the time, and Lacey Moores. At trial, the defense contended that Ward acted in self-defense. The jury found the Defendant guilty of manslaughter as to the death of Hall and guilty of attempted second degree murder as to the stabbing of Ruinato. The Defendant was sentenced to a total of sixty years in state prison. The appellate court affirmed the Defendant's judgment and sentence. <u>Ward v. State</u>, 90 So. 3d 281 (Fla. 1st DCA 2012), <u>cert. denied</u>, <u>Ward v. Florida</u>, 133 S. Ct. 549 (2012).

(Ex. 4 at 616-17).

The order identified the controlling legal standard as the *Strickland* standard (Ex. 4 at 617-18), and rejected Ward's claim for these reasons:

The Defendant claims that he was denied the effective assistance of counsel due to his trial counsel's failure to "retain a use of force expert (and failing to present the expert as a defense witness at trial)."

The Court finds that this sort of testimony would not have been admissible evidence. In State v. Andrews, the Fourth District Court of Appeal discussed similar expert testimony as to whether use of force was justified. In that case:

> **The State relied upon State Attorney Barry Krischer's expert testimony that the officer's actions were appropriate and his use of force was justified**. Generally, expert testimony is admissible if the disputed issue is beyond the ordinary understanding of the jury. A trial court's decision to allow expert testimony is reviewed for abuse of discretion. However, that discretion is not boundless, **and expert testimony should be excluded where the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts**.

> **Whether Officer MacVane was standing in harm's way and therefore was justified in discharging his firearm in defending himself from the oncoming vehicle was for the jury to determine. This determination could have been made from the testimony of Officer MacVane, Andrews, Tyra Drummer and the expert's testimony on the physical evidence. There was no basis for the State Attorney to give his opinion on the matter.**

> The State's argument that Krischer's opinion was proper because he was not the prosecutor on the case and was called to testify as a factual witness is not persuasive. **He was not a factual witness. He was not an eye witness, he specifically testified that he did not perform any tests at the crime scene, and he gave no testimony regarding the physical evidence at the scene.**

> Thus, the trial court abused its discretion when it overruled defense counsel's objection to the testimony.

State v. Andrews, 820 So. 2d 1016, 1025 (Fla. 4th DCA 2002) (citations omitted) (emphasis added).

Similarly, Mr. Bedard was not an eye witness and would not otherwise be a factual witness. "Because jurors are capable of determining whether the use of force in self-defense is reasonable, expert testimony bearing on that issue is generally inadmissible." State v. Salazar, 898 P.2d 982 (Ariz. App. 1995). The Seventh Circuit Court of Appeals has explained regarding "use of force" experts that:

> As referred to above, the question of whether a police officer has used excessive force in arresting a suspect is a fact-intensive inquiry turning on the reasonableness of the particular officer's actions in light of the particular facts and circumstances of the situation faced. **What is reasonable under any particular set of facts is "not capable of precise definition or mechanical application."** Accordingly, whatever insight Inspector Lukas and Sgt. Campbell might have had into whether or why Officer Hespe used excessive force would have been of little value except as to possibly causing confusion and bore a substantial risk of prejudice. **The jury, after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by the officers to subdue Thompson was objectively reasonable given the circumstances in this case. Introducing two experts to testify that Officer Hespe used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts.** In other words, they would have been "induced to decide the case on an improper basis . . . rather than on the evidence presented . . . ," which is precisely why the evidence should have been excluded.

Thompson v. City of Chicago, 472 F.3d 444, 458 (7th Cir. 2006) (citations omitted) (emphasis added).

The Court finds Mr. Bedard's testimony to be similar to proffered testimony analyzed by Fourth District Court of Appeal in Mitchell v. State, 965 So. 2d 246 (Fla. 4th DCA 2007). The appellate court explained:

> Dr. Edney's proffered testimony boils down to a statement that, **based upon what Mitchell told him, Mitchell reasonably believed that he had to defend himself or be killed.** There is nothing in his testimony which concerns a subject beyond the common understanding of the average person. **If the jury believed Mitchell, then it would find that he acted in self-defense. Thus, the issue is not one on which expert testimony should be permitted. It merely allowed an expert witness to bolster Mitchell's credibility which is improper.** Acosta v. State, 798 So.2d 809, 810 (Fla. 4th DCA 2001). And it improperly introduces Mitchell's self-serving statements which are otherwise inadmissible hearsay. See Lott v. State, 695 So.2d 1239, 1243 (Fla.1997).

Mitchell v. State, 965 So. 2d 246, 251 (Fla. Dist. Ct. App. 2007) (emphasis added).

Because the proposed expert witness testimony would have been inadmissible, defense counsel cannot be considered "deficient" for not presenting such evidence at trial. "Trial counsel cannot be deemed ineffective for failing to present inadmissible evidence." Owen v. State, 986 So. 2d 534, 546 (Fla. 2008).

Furthermore, Leo Thomas, Defendant's trial counsel, testified as to this issue. He testified that [at] the time of the trial he had not ever been aware of the existence of a "force of use [sic] expert" and he believed, even now, that such testimony would be inadmissible. The Court would note that "[s]trategic decisions that are reasonable under the norms of professional conduct do not constitute the ineffective assistance of counsel." Bonner v. State, 981 So. 2d 499, 502 (Fla. 3d

DCA 2008). "Tactical decisions generally are for counsel to make and *will not be second guessed unless shown to be patently unreasonable*." <u>Roesch v. State</u>, 627 So. 2d 57, 58 n.3 (Fla. 2d DCA 1993) (emphasis added); <u>see also</u> <u>Haliburton v. Singletary</u>, 691 So. 2d 466, 471 (Fla. 1997). Indeed, as one federal court put it, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987).

> The Court finds it is objectively reasonable for an attorney to conclude that testimony of a "use of force" expert would be inadmissible and not call such a witness to testify. Because the decision not to call a "use of force expert" is not "patently unreasonable," this claim of ineffective assistance of counsel fails.

(Ex. 4 at 619-21).

Ward argues that the state court's application of *Strickland* was unreasonable, because the court wrongly concluded that Mr. Bedard's testimony as a "use of force" expert was inadmissible. (Doc. 1 at 20-21). Ward discusses Florida's standard for determining the admissibility of expert testimony and concludes that Bedard's testimony met that standard. Ward notes that Bedard previously had been qualified as a use-of-force expert pursuant to the *Frye* standard (the standard Florida uses), and that Bedard was accepted as a "use of force" expert in at least one criminal case in Florida prior to Ward's 2010 trial. (Doc. 1 at 21-29; Doc. 27 at 1-4).

The State maintains that the state court's determination—that Bedard's proposed expert testimony was inadmissible under Florida law—is a state-law

determination that this court should not second guess. Because counsel cannot be deficient for failing to offer evidence that would not have been admitted, the state court's decision was consistent with *Strickland*. (Doc. 15 at 26-27).

Ward's claim that the state court unreasonably applied *Strickland* depends upon this court determining that no fairminded jurist could agree that counsel's performance was not deficient, but first this court would have to conclude that the state court misinterpreted state law on the admissibility of the proffered expert testimony. In *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005), the Eleventh Circuit addressed a similar circumstance. Petitioner Herring argued that his trial counsel was ineffective for failing to make an objection, based on state law, to the introduction of evidence at the penalty phase of his trial. The state court concluded that Herring's proposed objection would have been overruled and, therefore, counsel was not deficient. *Id*. at 1354-55. The Eleventh Circuit held:

> The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [Herring's counsel] done what Herring argues he should have done. . . . It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."

*Id*. (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

Here, as in *Herring*, the state courts have already answered the question of what would have happened had trial counsel offered Bedard's proposed expert

testimony—it would not have been admitted under Florida law. Because this court will not "second guess" the state courts' conclusion that the evidence was inadmissible under Florida's evidentiary standards, Ward cannot demonstrate counsel was deficient for failing to offer it. *See Herring* at 1355; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." (citations omitted)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (declining to review a state court's interpretation of state law, and holding that where a habeas petitioner claimed counsel was ineffective for failing to argue that certain evidence was inadmissible under Alabama law, and the Alabama state court already had concluded that the evidence was admissible under state law so the objection would have been overruled, the petitioner's ineffective assistance claim necessarily failed).

The state court's rejection of Ward's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Ward is not entitled to habeas relief on Ground One.

Page 22 of 63

**Ground Two**        **Defense counsel was ineffective for failing to object to the jury's inconsistent verdicts.**

Ward next claims that trial counsel was ineffective for failing to object to the jury's verdicts as inconsistent. Ward's proposed objection is based on the state-law principle that "True inconsistent verdicts are those in which an acquittal on one count negates a necessary element for conviction on another count." (Doc. 1 at 31 (quoting *State v. Kelley*, 109 So. 3d 316, 317 (Fla. 2d DCA 2013)). Ward asserts that the jury's finding that he committed attempted second-degree murder when he stabbed Ruinato (Count 2) is legally inconsistent with its finding that he committed manslaughter when he fatally stabbed Hall (Count 1). Ward explains:

> Petitioner Ward's state of mind was the same for both counts – as the actions that formed the bases for both counts occurred simultaneously. The *mens rea*/state of mind for manslaughter is less than *the mens rea*/state of mind for second-degree murder. . . . By finding Petitioner Ward guilty of the lesser offense of manslaughter for count 1 – the jury determined that Petitioner Ward did not act with a depraved mind – the *mens rea*/state of mind for second-degree murder . . . . This element (i.e., that Petitioner Ward acted with a depraved mind) is also an essential element of the attempted second-degree murder count charged in count 2. "[A]s a result, the acquittal on the [second-degree murder] charge negated the necessary element of [intent] in the [attempted second-degree murder] count, making the two legally interlocking." *Kelley*, 109 So. 3d at 318 (citations omitted).

(Doc. 1 at 31-32) (alterations in original).

The parties agree that Ward presented this claim to the state courts as Ground Three of his amended Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 5; Doc. 15 at 28-30). The State asserts that Ward is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 15 at 30-36).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard discussed above.

### B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100. Ward's reliance on the district court's erroneous ruling in *Shelton, supra*, does not rebut the *Richter* presumption. *See* discussion *supra* Ground One, Part A.

Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's final order denying postconviction relief and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Page 24 of 63

The state circuit court correctly identified *Strickland* as the controlling legal standard (Ex. 4 at 617-18), and rejected Ward's claim for these reasons:

> The Defendant claims that his counsel was ineffective for failing to object to his dual convictions of manslaughter and attempted second degree murder. However, the Defendant's counsel was not deficient for failing to challenge the purportedly inconsistent verdicts, as the verdicts were legally permissible.
>
> True, the verdicts could perhaps be considered to be *factually* inconsistent given the two crimes concern differing states of mind. However, factually inconsistent verdicts are permissible in Florida. See Flores v. State, 974 So. 2d 556 (Fla. 5th DCA 2008).
>
> As the Florida Supreme Court has explained, "[o]ur cases concerning 'truly inconsistent' verdicts come into play when verdicts against one defendant refer to *legally* interlocking charges." State v. Connelly, 748 So. 2d 248, 252 (Fla. 1999) (emphasis retained). The Defendant's dual convictions of manslaughter and attempted second degree murder involving *two separate victims* are not "truly inconsistent."
>
> The Defendant's counsel had no legal cause to object to the verdicts. Therefore, the Court finds that this claim is without merit. "Trial counsel cannot be deemed ineffective for failing to raise meritless claims *or claims that had no reasonable probability of affecting the outcome of the proceeding*." Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999) (emphasis added).

(Ex. 4 at 622).

As with Ground One, *supra*, the state court already has answered the question of what would have happened had trial counsel made Ward's state-law-based objection of inconsistent verdicts—the objection would have been overruled on the

ground that the verdicts were not truly inconsistent under Florida state law.[6] This

court will not second-guess the state court's interpretation of state law. *Herring*, 397

F.3d at 1354-55; *Richey*, 546 U.S. at 76; *Callahan*, 427 F.3d at 932. Because counsel

had no basis to object, the state court's rejection of Ward's ineffective assistance

claim is a reasonable application of the *Strickland* standard. *Meders v. Warden, Ga.

Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective

assistance of counsel to fail to make an objection that is not due to be sustained.");

*Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that habeas petitioner

could not possibly have suffered *Strickland* prejudice where the objection counsel

---

[6] An "inconsistent verdicts" argument raises no federal constitutional concerns. *See, e.g.*, *Dunn v. United States*, 284 U.S. 390, 393 (1932) (holding that a criminal defendant convicted by a jury on one count cannot attack the conviction because it was inconsistent with the verdict of acquittal on another count; "Consistency in the verdict is not necessary"); *United States v. Powell*, 469 U.S. 57, 64-65 (1984) (recognizing the continued validity of the *Dunn* rule; "As the *Dunn* Court noted, where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors." (quoting *Dunn*, 284 U.S. at 393)); *Harris v. Rivera*, 454 U.S. 339, 345 (1981) (denying state prisoner's habeas corpus challenge to conviction where prisoner alleged denial of due process due to inconsistent bench trial verdicts; holding that prisoner "has no constitutional ground to complain," and that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." (citations omitted)).

failed to make would have been futile). Petitioner is not entitled to habeas relief on Ground Two.

> **Ground Three**      **Appellate counsel was ineffective for failing to argue on direct appeal that the state trial court erred by preventing Petitioner Ward from presenting witnesses to testify regarding one of the alleged victim's character trait of violence.**

Ward claims that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in excluding the testimony of a witness (Kelly Crain), who would have testified concerning Victim Joseph Hall's alleged "character trait of violence toward men who allegedly abuse women." (Doc. 1 at 33-41). Ward asserts that Crain's testimony was admissible reputation evidence under Florida law and that it supported his theory that he stabbed Hall in self-defense. Ward explains that Ms. Crain's testimony would have corroborated his version of events, namely, that after Sparling told Hall that Ward hit her, Hall "acted consistent with his character trait and attacked Petitioner Ward—because Mr. Hall had a character trait of violence towards men who allegedly abuse women." (*Id*. at 43). Ward alleges that the issue was properly preserved during trial, and that had appellate counsel raised it on direct appeal, there is a reasonable probability that the First DCA would have reversed his manslaughter conviction and remanded for a new trial. (*Id*. at 43-44).

The parties agree that Ward presented this claim to the First DCA as Ground Two of his petition alleging ineffective assistance of appellate counsel, and that the First DCA denied relief on the merits without explanation. (Doc. 1 at 33, 44; Doc. 15 at 36-37). The State asserts that Ward is not entitled to federal habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 15 at 37-49).

### A. The First DCA's decision is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

The First DCA denied Ward's claim in a one sentence opinion: "The petition alleging ineffective assistance of appellate counsel is denied on the merits." *Ward v. State*, 163 So. 3d 616 (Fla. 1st DCA 2015) (copy at Doc. 15-47, Ex. 75). Ward relies on the federal district court's erroneous ruling in *Shelton*, 802 F. Supp. 2d at 1297, to argue that the First DCA's decision does not qualify as an "adjudication on the merits" under 28 U.S.C. § 2254, because it is a *per curiam* decision. (Doc. 1 at 17-19). As discussed above, Ward's position is contrary to the Eleventh Circuit's subsequent ruling in *Shelton*, 691 F.3d at 1353, and is also contrary to the First DCA's unambiguous language "denied on the merits." The First DCA's opinion is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

### B.     Clearly Established Federal Law

An ineffective assistance of appellate counsel claim is governed by the two-part test announced in *Strickland, supra*. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective). The petitioner must show that (1) appellate counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's unreasonable performance, petitioner would have prevailed in his appeal. *Smith v. Robbins*, 528 U.S. at 285-86.

In *Davila v. Davis*, — U.S. —, 137 S. Ct. 2058 (2017), the United States Supreme Court reiterated these familiar principles governing review of an appellate attorney's performance:

> Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.

*Id*. at 2067 (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986), *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983), and *Smith v. Robbins*, 528 U.S. at 288).

### C.     Section 2254 Review of State Court's Decision

Where, as here, the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*. The

*Richter* test provides: "Where a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98.

> [A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court.

*Id.* at 102.

One argument that could have supported the First DCA's decision is that Ward failed to establish that the issue concerning Ms. Crain's testimony was plainly stronger than the seven issues that appellate counsel actually raised in Ward's direct appeal. Appellate counsel raised these issues:

> 1.     The trial court erred in giving a jury instruction on the justifiable use of deadly force that improperly imposed a duty to retreat.

> 2.     The trial court erred in giving an erroneous jury instruction on justifiable use of deadly force that deprived Ward of the presumption of fear when the victim has forcefully removed or attempted to remove another person from a dwelling or residence.

> 3.     The trial court erred in failing to instruct the jury on Florida's "Stand Your Ground" immunity.

> 4.     Trial court erred in instructing the jury on the lesser included offense of attempted voluntary manslaughter where Appellant was convicted of attempted second degree murder and the lesser offense included an erroneous "intent to kill" element.

5.     The trial court erred in denying the motion for judgment of acquittal on the attempted second degree murder charged in Count Two, since the evidence was insufficient to prove the elements of second degree murder.

6.     The trial court erred in imposing consecutive sentences.

7.     The trial court erred in not declaring a mistrial when the prosecutor made improper remarks in closing argument.

(Doc. 15-45, Ex. 67).

Ward argues that appellate counsel's performance was deficient, because the trial court erroneously excluded the evidence and the issue was preserved for appellate review. (Doc. 1 at 33-44 (habeas petition); *see also* (Doc. 15-46, Ex. 72 (state petition alleging ineffective assistance of appellate counsel)). Ward fails to demonstrate, though, that the reputation evidence claim was plainly stronger than any of the issues appellate counsel raised. Indeed, the record demonstrates that the reputation evidence argument was a relatively weak one.

In Florida, "[r]eputation evidence is just that – evidence of one's <u>reputation in the community</u> for a particular character trait. It is not the personal opinion of the testifying witness or evidence of specific acts of [the alleged trait]." *Johnson v. State*, 108 So. 3d 707, 709-10 (Fla. 5th DCA 2013), *review denied*, 133 So. 3d 526 (Fla. 2014) (emphasis added). "Reputation evidence must be sufficiently broad-based and

should not be predicated on mere personal opinion, fleeting encounters, or rumor." *Lott*, 695 So. 2d at 1242.

Reputation evidence "is hearsay by its very nature" and, therefore, its admission is controlled by Florida's hearsay exception for reputation testimony, Section 90.803(21), Florida Statutes. *Johnson*, 108 So. 3d at 710. "The proponent of reputation evidence must 'lay the foundation that the witness is aware of the person's reputation in the community.'" *Id.* at 710 (quoting Charles W. Ehrhardt, *Florida Evidence* § 609.1 (2012)). "The party opposing the introduction of the evidence has the right to test the sufficiency of the foundation through cross-examination." *Johnson*, 108 So. 3d at 710 (citing *Ehrhardt*, *supra*, § 609.1). The trial judge must make the preliminary factual determination of whether the proponent established by a preponderance of the evidence that the proffered witness "is sufficiently familiar with the reputation" of the person. *Id.* (citing *Ehrhardt*, *supra*, § 609.1 ("[T]o be admissible, the trial judge must find that the witness is in fact aware of the person's reputation and not the impression of one or two individuals or the personal opinion of the witness.")).

At trial, defense counsel proffered the testimony of Ms. Crain concerning: (1) Hall's alleged reputation for violence toward men who allegedly abuse women; and

(2) Hall's alleged commission of specific acts of violence. (Doc. 15-29, Ex. 42 at

1462-65). Ward's claim here concerns only the proffered reputation evidence.

On direct examination, Ms. Crain testified:

Q [Defense Counsel Mr. Thomas]    Okay. Now, based on your living here in Milton all of those years did you know what Joe Hall's reputation was for peacefulness or violence against young men, who he believed abused women?

A    Yes.

Q    And what was that?

A    He was very much a protector of women. He –

Q    And towards the young men, who abused them, what was his reputation?

A    He didn't really stand for that at all. He – he was very outspoken about how he didn't feel that it was right, and he would get very angry about it.

Q    But so as far as peacefulness or violence?

A    He's very peaceful towards women.

Q    And what about towards the young men?

A    Not so much.

Q    Pardon me?

A    Not so much.

(Doc. 15-29, Ex. 42 at 1448).

During cross-examination, the State elicited testimony from Ms. Crain that her knowledge of Hall's purported reputation was not gained from a broad-based knowledge of the community's opinion of Hall's reputation, but rather from her personal experience with Hall concerning an incident between herself and her then boyfriend Josh Laird. (Doc 15-29, Ex. 42 at 1450-52, through Doc. 15-30, Ex. 42 at 1453-56). Crain also admitted that during that personal experience, Hall never actually threatened or physically approached Laird, and although she believed that Hall may have slashed one of Laird's tires, Hall was not violent with Laird himself. (Doc. 15-30, Ex. 42 at 1454-55). The State also elicited testimony that Ms. Crain did not know of Hall ever fighting or being physically violent to anyone. (Doc. 15-30, Ex. 42 at 1455). The State concluded its cross:

> Q    All right. As far as knowing his reputation, you don't – you don't know him to have a reputation of actual violence to anyone do you?
>
> A [Ms. Crain]    Just spoke of it, of being protective of women. I've never actually seen him.
>
> Q    Okay. So he'd make statements that he might commit a violent act to protect a woman?
>
> A.    Yes.

(Doc. 15-30, Ex. 42 at 1456). The trial court ruled: "At this time in the trial there's not a basis to present the testimony that's being offered by Ms. Crain up to this particular point." (*Id*. at 1460).

Given this record a reasonable appellate attorney could conclude that the defense lacked the proper foundation for Ms. Crain's purported reputation testimony. Moreover, even if appellate counsel believed he could argue in good faith that the defense laid a sufficient predicate, appellate counsel reasonably could have decided that the issue had little chance of success given the applicable standard of review, namely, Florida's abuse of discretion standard. *See Johnson*, 108 So. 3d at 708, 710 (applying Florida's abuse of discretion standard to preserved error of excluding proffered reputation evidence). "This standard of review rarely results in relief because it requires affirmance of the trial court order unless *no reasonable judge* could have reached the decision challenged on appeal." *Clark v. State*, 95 So. 3d 986, 987 (Fla. 2d DCA 2012) (citing *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980)) (emphasis added). A reasonable appellate attorney, cognizant of this burden, could decide that the reputation evidence claim was weak given the entirety of Ms. Crain's testimony, which reasonably could be perceived as lacking true familiarity with the purported reputation of Hall in the "community," as the statute requires. *Smith v. Murray*, 477 U.S. at 536 ("Th[e] process of 'winnowing

out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Barnes*, 463 U.S. at 751-52).

Because Ward has not shown that "no fairminded jurist could agree" with the First DCA's ruling on his ineffective assistance of appellate counsel claim, Ward is not entitled to habeas relief. *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (reversing grant of habeas relief when it was not clear that the state court "erred so transparently that no fairminded jurist could agree with that court's decision").

| | |
|---|---|
| **Ground Four** | **Petitioner Ward's constitutional due process right to a fair trial was violated when the state trial court refused to give a jury instruction that was consistent with his theory of the case (self defense).** |
| **Ground Six** | **Petitioner Ward's constitutional due process right to a fair trial was violated when the state trial court erroneously gave a jury instruction on the justifiable use of deadly force that improperly imposed a duty to retreat.** |

Ward raises due process challenges to two aspects of the jury instructions. He alleges: (1) the trial court gave a standard instruction on the justifiable use of deadly force that misstated Florida law by improperly imposing on him a duty to retreat; and (2) the trial court erroneously refused to give his requested instruction on the "presumption of fear" portion of Section 776.013(1), Florida Statutes. (Doc. 1 at 45-

47, 50-53). Ward asserts that because a criminal defendant has a constitutional due process right to jury instructions that accurately state the law, and because the instructions in his case incorrectly stated the law of self-defense in Florida, the state courts' rejection of his claims were contrary to clearly established Federal law. (*Id.* at 46-47, 50-53).

The State asserts that Ward copied these claims largely verbatim from his initial brief on direct appeal, and that the First DCA summarily rejected them. (Doc. 15 at 49-50, 64). The State argues that the First DCA's decision is an "adjudication on the merits" entitled to deference under § 2254(d), and that Ward fails to carry his burden under that standard because he does not present any explanation as to how the state courts' adjudication of his claim contravenes clearly established Federal law. (Doc. 15 at 51). Rather, Ward concedes that the question of whether his jury was accurately instructed on the law of self-defense in Florida is an issue of state law, and merely continues to argue that the instructions failed to accurately reflect Florida law. (Doc. 15 at 51 (quoting Doc. 1 at 46-47)). The State emphasizes that the state courts are the final arbiters of state law. (Doc. 15 at 51-53, 64-65).

### A.    The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

Ward's contention that the First DCA's decision does not qualify as an "adjudication on the merits" under § 2254(d), because it is a *per curiam* affirmance, is without merit for the reasons discussed above. *See Richter*, 562 U.S. at 99, 100; *see also* discussion *supra* Ground One, Part A.

### B.    Clearly Established Federal Law

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979)). A defendant claiming that the jury instructions violated due process must show not only that the instructions were deficient, but also that "the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks and citation omitted). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *McNeil*, 541 U.S. at 437 (internal quotation marks and citations omitted). "If the charge as a whole is ambiguous, the question is whether there is a 'reasonable likelihood that

the jury has applied the challenged instruction in a way that violates the Constitution.'" *McNeil*, 541 U.S. at 437 (quoting *McGuire*, 502 U.S. at 72).

### C.    Section 2254 Review of the State Court's Decision

Ward alleges that the jury instruction on the justifiable use of deadly force misstated Florida law because it imposed a duty on him to retreat. The wording Ward takes issue with was part of the following instruction. The challenged language is bolded:

> As to both counts of the Information and the lesser included offenses, an issue in this case is whether the defendant acted in self-defense. It is a defense to the offenses with which Brandon Ward is charged and to all lesser included offenses, if the death of Joe Hall and the injury to Joseph Ruinato resulted from the justifiable use of deadly force.

> Deadly force means force likely to cause death or great bodily harm. The use of deadly force is justifiable only if the Defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting – resisting the following. Let me put it like that – another's attempt to murder him, or any attempt to commit murder, aggravated battery, or felony battery upon him.

> . . . .

> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself, or the imminent commission of murder, aggravated battery, or felony battery against himself.

You are advised the crimes of murder, aggravated battery, and felony battery have been previously defined in these instructions.

The defendant need only have a reasonable belief any one of these offenses were about to occur.

However, the use of deadly force is not justifiable if you find that Brandon Ward initially provoked the use of force against himself unless the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm, and had exhausted every reasonable means to escape the danger other than using deadly force on Joseph Hall and/or Joseph Ruinato, or in good faith the defendant withdrew from the physical contact with Joe Hall and/or Joseph Ruinato, and clearly indicated to Joe Hall and/or Joseph Ruinato that he wanted to withdraw and stop the use of deadly force [b]ut Joe Hall and/or Joseph Ruinato continued or resumed the use of force.

In deciding whether the defendant was justified in the use of deadly force you must judge him by the circumstances by which he was surrounded at the time the force was used.

The danger facing the defendant need not have been actual, however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that **the danger could be avoided only through the use of that force.** Based upon appearances, the defendant must have actually believed that danger was real.

If the defendant was not engaged in an unlawful activity and was attacked at any place where he had a right to be, he had no duty to retreat, and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself, or to prevent the commission of murder, aggravated battery, or felony battery.

(Doc. 15-32, Ex. 45 at 2082-84) (emphasis added). Ward argues (as he did on direct appeal) that the emphasized language erroneously imposed on him a duty to retreat. Ward contends that the challenged language does not appear in any statutes and is not derived from case law.

The jury instruction, including the language Ward challenges, tracks the language in Florida Standard Jury Instruction (Crim.) 3.6(f), Justifiable Use of Deadly Force. The language in question makes no mention, or suggestion, of a duty to retreat. Ward's contrary interpretation ignores the overall charge and, in particular, the portion that says:

> If the Defendant was not engaged in an unlawful activity and was attacked at any place where he had a right to be, <u>he had no duty to retreat</u> and had the right to stand his ground and meet force with force including deadly force if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself.

(Doc. 15-32, Ex. 45 at 2084) (emphasis added). This latter language tracks the language regarding no duty to retreat in Section 776.013(3), Florida Statutes (2005), in effect at the time of Ward's trial.

The trial court gave the standard jury instruction 3.6(f) as approved by the Florida Supreme Court. *See In re Standard Jury Instructions In Criminal Cases (No. 2005-4)*, 930 So. 2d 612, 613-14 (Fla. 2006). Although the Florida Supreme Court cautioned at that time that its approval of the instruction "express[ed] no opinion on

Page 41 of 63

the correctness of the instructions," *id*. at 613, that court has since held that the instructions correctly state Florida law. In *State v. Floyd*, 186 So. 3d 1013, 1020-21 (Fla. 2016), the Florida Supreme Court reviewed standard jury instruction 3.6(f), to determine whether it "[i]s confusing, contradictory, or misleading with respect to the duty to retreat when there is a question as to whether the defendant was the initial aggressor." *Floyd*, 186 So. 3d at 1019. The court held that the instruction "accurately communicate[s] the law to the jury", is not confusing, and "correctly guide[s] the jury." *Id*. at 1021-22. Given that the Florida Supreme Court has determined that the precise instruction given here accurately states the law of self-defense in Florida, Ward cannot show that the First DCA's rejection of his due process claim is inconsistent with *Sandstrom* or *McGuire*, *supra*. Ward is not entitled to habeas relief on this claim.

Ward also contends that the trial court erroneously refused to read the "presumption of fear" portion of the justifiable use of deadly force instruction contained in Section 776.013(1), Florida Statues. Section 776.013(1) reads:

(1)     A person is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:

(a)     The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had

unlawfully and forcibly entered, a dwelling, residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person's will from the dwelling, residence, or occupied vehicle; and

(b)      The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

Fla. Stat. § 776.013(1) (2005).

Ward claims that he was entitled to the "presumption" instruction, because at the time he stabbed Mr. Hall and Mr. Ruinato, they were attempting to remove him against his will from Ms. Sparling's residence where Ward was an invited guest. (Doc. 1 at 46).

The state trial court refused to give the "presumption" instruction because the entire incident occurred outside the residence:

THE COURT:       He wasn't in a residence.

MR. THOMAS [Defense Counsel]:      I know it, Judge, but what was the plan?

THE COURT:       It says the defendant was in. He was in the yard.

MR. THOMAS:   I understand that, but they were – okay, Judge. What we're talking about is a theory here that they were going to remove him from – they were [g]oing to remove from the residence if he was in the residence. That's the plan that they had. It doesn't have to succeed. It's just what the plan was.

THE COURT:    He wasn't in the residence though. It doesn't matter what the plan was.

(Doc. 15-31, Ex. 44 at 1918). The trial court instead gave the remainder of the instruction contained in Section 776.013:

> (3)    A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or to another or to prevent the commission of a forcible felony.

Fla. Stat. § 776.013(3) (2005).

The state court's interpretation of Section 776.013(1) and conclusion that the "presumption of fear" did not apply because the victims were not in a dwelling or residence, or attempting to remove Ward from a dwelling or residence as those terms are defined in Section 776.013(5), is a state-law determination this court will not second-guess.[7] Ward has not shown that the state court's refusal to give his requested "presumption" instruction deprived him of his constitutional right to have the jury correctly instructed on the law.

---

[7] Even according to Ward's testimony, he and the victims were *outside the residence* near cars parked in the driveway when Ward stabbed the victims. (Doc. 15-30, Ex. 43 at 1670-83).

To summarize, Ward has not shown that the jury instructions, viewed in their entirety, inaccurately stated the law in Florida, much less that any error in the instructions "so infected the entire trial" that his convictions violate due process. *McGuire*, 502 U.S. at 72. Because Ward has not established that the First DCA's rejection of his jury instruction claims was contrary to, or an unreasonable application of, clearly established Federal law, he is not entitled to habeas relief on Ground Four or Six.

**Ground Five**    **The prosecutor shifted the burden of proof and violated Petitioner Ward's constitutional due process right to a fair trial when the prosecutor requested the jury to find that Petitioner Ward was lying as the sole test for determining the issue of guilt (i.e., a reason other than that the prosecution has proved its case beyond a reasonable doubt).**

Ward claims that the prosecutor violated his right to due process when he made these remarks in his closing arguments to the jury:

MR. ELMORE:    You'll decide who to believe in this case, and the judge will tell you that is your job.

And you'll decide if Samantha Sparling and Brandon Michael Ward, who were lovers then, and who Samantha Sparling admits that she still cares for the defendant, you'll decide whether their story about what Joe Hall did was credible or not.

. . . .

Now, you decide whether Brandon Ward's story that Joe Hall swung—and Samantha Sparling's story that Joe Hall swung—you'll decide if that is credible. Or whether the testimony of Lacey Moores and Joe Ruinato who no evidence has shown that they ever told any lies about this. You'll decide.

Now, **you'll decide whether any of the other things Brandon Ward said are credible. You'll decide if it is credible** when he said, "I didn't talk with Samantha about inviting my Marine buddies over for that party at their house. And I didn't know that we were inviting Joe Hall over."

**You decide**. **You decide, if his testimony is credible** that did he not [sic] hit Samantha Sparling. And there is [sic] eye witnesses and the she [sic] admitted it. **You'll decide** whether, when it was deathly quiet and serene and peaceful at 2 in the morning, and he supposedly is leaning against the back of his car right in front of the garage, that he didn't hear Charlie Zuccarello come out of the garage door, go out the back garage door, come back in the back garage door, go back in the side garage door.

You decide, if that is credible.

He was out there waiting. Okay.

**You'll decide** whether he was there or whether he was hiding in those bushes and then crouched down behind that truck watching Joe Hall and Joey Ruinato and Samantha Sparling walk past him. And then turned and followed them after Lacey Moores stopped him.

(Doc. 15-31, Ex 45 at 1972, 1986-87) (emphasis added). Ward claims that the emphasized language "enunciated an erroneous and misleading statement of the State's burden of proof because it improperly asked the jury to determine whether Petitioner Ward was lying as the sole test for determining the issue of guilt." (Doc.

1 at 48-49) (citing *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.")). Ward asserts that he raised this claim in his direct appeal where he "argued that the prosecutor shifted the burden of proof and violated his constitutional due process right to a fair trial." (Doc. 1 at 47).

The State asserts a procedural default defense. The State contends that, although Ward's counseled direct appeal brief challenged the prosecutor's remarks, Ward based his claim entirely on state law and did not argue that the remarks also violated his constitutional right to due process. (Doc. 15 at 53-60 (discussing Ward's appellate brief, Doc. 15-45, Ex. 67, pp. 48-55)). Ward's failure to "fairly present" the state court with the federal due process claim he now asserts on habeas review renders the claim procedurally defaulted. (Doc. 15 at 53-60). The State asserts that even if this court deemed Ward's federal due process claim properly exhausted, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 15 at 60-64).

### A.    Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C.

§ 2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78.

"To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277-78. A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation'") (quoting *Kelley*, 377 F.3d at 1344-45). Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a

Page 48 of 63

meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

"[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015). A petitioner does so by, for example, "includ[ing] in his claim before the state appellate court 'the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."'" *Lucas*, 682 F.3d at 1351 (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (concluding that petitioner's federal claims were "fairly presented" where he provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas*, 682 F.3d at 1352 (quoting *Kelley*, 377 F.3d at 1343-44). Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be

presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *French*, 790 F.3d at 1271 (quoting *Kelley*, 377 F.3d at 1345).

A claim that was not fairly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

Although it is difficult to "pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies," *McNair*, 416 F.3d at 1302, it is clear that Ward's challenge to the prosecutor's remarks on direct appeal did not alert the state court that he was raising a federal due process claim. Ward labeled his claim:

ISSUE VII:  THE TRIAL COURT ERRED IN NOT DECLARING A
             MISTRIAL WHEN THE PROSECUTOR MADE
             IMPROPER REMARKS IN CLOSING ARGUMENT.

(Doc. 15-45, Ex. 67 at 48). Ward summarized his claim as follows:

> 7.  The trial court improperly denied a motion for mistrial based on the
> prosecutor's closing argument that shifted the burden of proof to the
> defense. Throughout the prosecutor's closing, he set up a decision
> framework for the jury that improperly urged that a verdict could be
> reached based on the credibility of the witnesses who gave
> contradictory versions of circumstances surrounding the killing.

(Doc. 15-45, Ex. 67 at 19).

The body of Ward's argument, which spanned seven pages, relied exclusively

on state law cases and discussed whether prosecutorial comments invited the jury to

convict the defendant for a reason other than his guilt of the crimes charged. (Doc.

15-45, Ex. 67 at 48-55). Ward did not mention, much less argue, the federal due

process standard for assessing whether allegedly improper prosecutorial comments

violated due process. *See Darden*, 477 U.S. at 181 (articulating the federal due

process standard—"whether the prosecutors' comments 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process'"—and

cautioning that "the appropriate standard of review for such a claim on writ of habeas

corpus is 'the narrow one of due process, and not the broad exercise of supervisory

power'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Ward did

not cite a single federal case in support of his argument. Ward's only reference to

federal law was buried in a string citation tacked onto this blanket statement:

> A mistrial should have been granted. <u>See</u>, <u>e.g.</u>, Art. I, Secs. 9, 16 Fla.
> Const.; Amends. V, VI, XIV U.S. Const.; <u>Gore v. State</u>, 719 So. 2d
> 1197 (Fla. 1998); <u>Bass v. State</u>, 547 So. 2d 680 (Fla. 1st 1989); <u>Chavers
> v. State</u>, 964 So. 2d 790 (Fla. 4th DCA 2007).

(Doc. 15-45, Ex. 67 at 49).

The Eleventh Circuit addressed a similar circumstance in *McNair*, *supra*. In

*McNair*, the petitioner claimed that the jury improperly considered extraneous

evidence during its deliberations. 416 F.3d at 1301. On direct appeal, McNair

couched his argument in terms of state law, with only two references to federal law:

a single federal district court case appearing in a seven-case string citation, and a

blanket statement in closing that both his federal and state constitutional rights were

violated. *Id*. McNair did not mention "the federal standard that extraneous evidence

is presumptively prejudicial," nor did he cite "any United States Supreme Court or

federal appellate court case dealing with extraneous evidence." *Id*. at 1303-04. The

Eleventh Circuit held that McNair failed to exhaust his federal claim, because the

gravamen of his claim, as presented to the state courts, dealt with state law. *Id*.

Here, as in *McNair*, Ward's fleeting reference to "Amends. V, VI, XIV U.S.

Const." did not fairly present a claim that the prosecutor's comments so infected his

trial with unfairness as to deprive him of his constitutional right to due process. *See Henry*, 513 U.S. at 366 ("If a habeas petitioner wishes to claim that [a] ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). Although Ward urges this court to find that the state court's decision was "contrary to and an unreasonable application of Petitioner Ward's constitutional due process rights." (Doc. 1 at 50). It would be problematic for this court to do so, however, because Plaintiff presented neither a federal due process claim nor the *Darden* standard to the state court. *See Parker v. Matthews*, 567 U.S. 37, 45-49 (2012) (identifying *Darden* as the "clearly established Federal law" for purposes of prosecutorial misconduct). As *Darden* emphasized, it is not enough that the prosecutor's comments were "improper," "offensive," "undesirable[,] or even universally condemned." *Darden*, 477 U.S. at 181. Rather, the prosecutor's misconduct must render the defendant's conviction "fundamentally unfair." *Id*. at 183. The state court had no opportunity to consider that question. It is not "sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley*, 377 F.2d at 1343-44 (citation omitted).

Ward's failure to exhaust his federal due process claim in the Florida courts renders it procedurally defaulted on habeas review. Ward makes none of the requisite showings to excuse his procedural default. Ward's procedural default, therefore, bars habeas review of Ground Five.[8]

**Ground Seven**      **The state trial court erred by denying Petitioner Ward's motion for judgment of acquittal for the attempted second-degree murder count.**

Ward claims that the trial court erred when it denied his motion for judgment of acquittal on Count 2—the attempted second degree murder of Mr. Ruinato. Ward explains that "the State's evidence failed to establish that [he] committed an act 'imminently dangerous to another and demonstrating a depraved mind' in that there was no proof [he] harbored 'ill will, hatred, spite or an evil intent' toward the victim (Joe Ruinato)." (Doc. 1 at 53). Ward concludes that his "constitutional due process rights were violated." (*Id.* at 53-54) (citing *Winship*, 397 U.S. at 364) (holding that the Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact

---

[8] Even if this court were to find Ward's due process claim properly exhausted, he is not entitled to habeas relief for the reasons outlined in the State's answer, Doc. 15 at 60-64.

necessary to constitute the crime charged"). Ward contends that the First DCA's affirmance of his conviction is inconsistent with *Winship*. (*Id*. at 53).

The State asserts a procedural default defense. The State contends that, although Ward argued on direct appeal that there was insufficient evidence of "a depraved mind," he did not fairly present the claim as one of federal constitutional dimension. Ward focused exclusively on what Florida courts consider to be indicia of "ill will, hatred, spite or an evil intent," which is one of Florida's definitions of "a depraved mind." (Doc. 15 at 65-67). The State argues in the alternative that even if Ward's direct appeal brief were deemed to present a federal sufficiency of the evidence claim, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 15 at 66-72).

### A.    Exhaustion and Procedural Default

Although Ward argues here that his sufficiency of the evidence claim involves a violation of his constitutional right to due process established in *Winship, supra*, he did not fairly present that federal claim to the state court in his direct appeal. On direct appeal, Ward labeled his claim:

> ISSUE V:    THE TRIAL COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL ON THE ATTEMPTED SECOND DEGREE MURDER CHARGED IN COUNT TWO, SINCE THE EVIDENCE

WAS INSUFFICIENT TO PROVE THE ELEMENTS OF
SECOND DEGREE MURDER.

(Doc. 15-45, Ex. 67 at 48). Ward summarized his claim as follows:

> 5.  Ward's motions for judgement [sic] of acquittal to the attempted
> second degree murder charge should have been granted. The State's
> evidence failed to prove that the attempted killing "evince[ed] a
> depraved mind regardless of human life" in that there was no proof
> Ward acted from "ill will, hatred, spite or an evil intent."

(Doc. 15-45, Ex. 67 at 19).

Ward's seven-page argument on the issue asserted that the State's evidence of "a depraved mind" was insufficient, because there was no evidence of "ill will, hatred, spite or an evil intent" as defined by state law. (Doc. 15-45, Ex. 67 at 37 (quoting *Marasa v. State*, 394 So. 2d 544, 545 (Fla. 5th DCA 1981))). Ward discussed six state law cases that determined the very narrow issue of whether the evidence satisfied Florida's standard of "ill will, hatred, spite, or evil intent."[9] (Doc. 15-45, Ex. 67 at 37, 39-42). Ward's direct appeal brief did not cite a single federal case, let alone *Winship* or *Jackson v. Virginia*. Ward did not reference the federal

_____

[9] Ward discussed *Marasa*, *supra*; *Bellamy v. State*, 977 So. 2d 682 (Fla. 2d DCA 2008); *Poole v. State*, 30 So. 3d 696 (Fla. 2d DCA 2010); *McDaniel v. State*, 620 So. 2d 1308 (Fla. 4th DCA 1993); *Williams v. State*, 674 So. 2d 177 (Fla. 2d DCA 1996); and *Wiley v. State*, 60 So. 3d 588 (Fla. 2011). (Doc. 15-45, Ex. 67 at 37, 39-42).

sufficiency of the evidence standard. The only time Ward alluded to federal law was in the final sentence of his argument when he said:

> As in the above cases, the State failed to prove that Ward acted with ill will, hatred, spite or evil intent when he stabbed Ruinato. The evidence is insufficient to support the conviction for attempted second degree murder in violation of Ward's right to due process. Art. I, Secs. 9, 16 Fla. Const.; Amend. V, VI, XIV U.S. Const.

(Doc. 15-45, Ex. 67 at 42-43). The "above cases" were the six state law cases.

The Eleventh Circuit has addressed "fair presentation" in the context of federal sufficiency of the evidence claims. In *Preston, supra*, the habeas petitioner claimed that the State failed to present sufficient evidence of premeditation at trial and, therefore, his conviction for premeditated murder violated his due process rights under *Jackson v. Virginia*. On direct appeal, however, Preston had claimed only that the trial court erred by failing to grant his motion for judgment of acquittal because there was insufficient evidence of premeditation. *Preston*, 785 F.3d at 453. Preston's appeal conceded that there was some evidence of premeditation, but argued that it was solely circumstantial. *Id*. The Eleventh Circuit held that Preston failed to "fairly present" his federal due process claim to the state courts. The court explained:

> In his initial brief to the Florida Supreme Court, Preston simply claimed that "the record . . . fails to contain sufficient evidence . . . of premeditation." He did not cite a single federal case, and relied instead on a panoply of Florida cases discussing the element of premeditation, as defined by state law. He never mentioned the federal Due Process

Clause or, indeed, any other federal constitutional provision. . . .
Moreover, Preston did not cite *Jackson v. Virginia*, nor even mention
the *Jackson* standard for assessing sufficiency of the evidence
challenges.

Instead, Preston asserted in his brief that his conviction rested on
insufficient evidence, without clarifying whether he intended to bring a
federal or a state sufficiency of the evidence claim. . . . Preston invoked
a phrase common to both federal and state law without explaining
which body of law provided the basis for his claim. "Simply referring"
to sufficiency of the evidence "is not a sufficient reference to a federal
claim. . . ." The Florida Supreme Court could reasonably conclude (as
it undoubtedly did) that when Preston claimed the evidence used to
obtain his conviction was insufficient, he meant to challenge that
conviction on the basis of state law alone.

*Id*. at 458-59.

Here, as in *Preston*, Ward did not fairly present his federal *Winship* claim (or

a *Jackson* claim) to the state court. *See Ramos v. Sec'y, Dep't of Corr*., 441 F. App'x

689, 696-97 (11th Cir. 2011) (holding that the petitioner did not fairly present his

federal sufficiency of the evidence claim to the state court when his direct appeal

brief made only a passing reference to his federal constitutional right to due process);

*Pearson v. Sec'y, Dep't of Corr*., 273 F. App'x 847, 850 (11th Cir. 2008) (holding

that merely challenging the sufficiency of the evidence of reasonable fear on the part

of the victim was not sufficient in itself to alert the state court to the presence of a

federal due process claim); *Cook v. McNeil*, 266 F. App'x 843, 845-46 (11th Cir.

2008) (explaining that "the tenor of [petitioner's] narrow arguments that challenged

the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court"). Fair presentation of a federal claim to a state appellate court requires more. *See McKinzie v. Sec'y, Dep't of Corr.*, 265 F. App'x 858, 860 (11th Cir. 2008) (holding that the district court erred in finding that petitioner's federal sufficiency of the evidence claim was unexhausted when petitioner clearly referred to the federal due process reasonable doubt standard before the state court).

Ward's failure to exhaust his federal sufficiency of the evidence claim renders the claim procedurally defaulted. Ward makes none of the requisite showings to excuse his default. Ward's procedural default bars federal habeas review of Ground Seven.[10]

**Ground Eight**     **The cumulative effect of the errors in this case deprived Petitioner Ward of a fair trial.**

Ward's final claim states in total:

> All of the errors committed in Petitioner's Ward's case, considered either individually or together, resulted in Petitioner Ward being denied a fair trial. "Where no single error or omission of counsel, standing alone, significantly impairs the defense, the district court may nonetheless find unfairness and thus, prejudice emanating from the

---

[10] Even if this court were to find that Ward exhausted his federal sufficiency of the evidence claim, he is not entitled to habeas relief for the reasons outlined in the State's answer, Doc. 15 at 67-72.

totality of counsel's errors and omissions." *Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir. 1979). *See also Cargle v. Mullen*, 317 F.3d 1196, 1206-07 (10th Cir. 2003).

(Doc. 1 at 58).

The States asserts three defenses: (1) Ward's claim of "cumulative effect" or "cumulative error" does not provide a basis for federal habeas relief; (2) Ward's claim is procedurally defaulted because he did not present this claim to the state courts; and (3) Ward's claim fails on the merits. (Doc. 15 at 73-76).

Assuming to Ward's benefit (without deciding) that a "cumulative error" claim can provide an independent basis for habeas relief, Ward is not entitled to such relief. First, Ward did not present the state court with a claim that the accumulation of both trial counsel's alleged errors <u>and</u> the trial court's alleged errors denied him a fair trial. Ward's state-court cumulative error claim presented in his Rule 3.850 proceeding was based solely on trial counsel's alleged errors. (Doc. 15-2, Ex. 1 at 97). Thus, his present claim is procedurally defaulted.

Second, even reviewing the portion of Ward's claim that <u>was</u> exhausted (the cumulative effect of trial counsel's alleged errors), that claim has no merit because Ward failed to show that his trial counsel erred, as discussed in Grounds One and Two above. *See Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) ("Because we have found no error . . . Insignares has failed to show that

Page 60 of 63

the state judge lacked a reasonable basis to deny his cumulative-error claim.");

*Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (concluding

that there can be no cumulative error where there is no individual error).

Ward is not entitled to habeas relief on Ground Eight.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.

*See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a certificate of appealability only

where a petitioner has made a 'substantial showing of the denial of a constitutional

right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage,

the only question is whether the applicant has shown that 'jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists

could conclude the issues presented are adequate to deserve encouragement to

proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting

*Miller-El*, 537 U.S. at 327). As the Supreme Court has stated:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has

not made the requisite demonstration. Accordingly, the court should deny a

certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation

by either party, that party may bring such arguments to the attention of the district

judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.     The petition for writ of habeas corpus (Doc. 1), challenging the

judgment of conviction and sentence in *State of Florida v. Brandon Michael Ward*,

Santa Rosa County Circuit Court Case No. 2006-CF-911, be **DENIED**.

2.     The District Court **DENY** a certificate of appealability.

3.     The clerk of the court close this case.

At Panama City, Florida, this <u>10th</u> day of October, 2019.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**